ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| RIMCO, LLC<br><br>Recurrente<br><br>v.<br><br>JUNTA DE SUBASTAS DE LA ADMINISTRACIÓN DE SERVICIOS GENERALES<br><br>Recurrida<br><br>RELIABLE EQUIPMENT CORP.<br>Licitador Agraciado | KLRA202400195 | *REVISIÓN ADMINISTRATIVA* procedente de la Junta de Subastas de la Administración de Servicios Generales<br><br>Subasta Formal Núm.<br>24J-06132<br><br>Sobre:<br><br>IMPUGNACIÓN DE SUBASTA FORMAL |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 22 de mayo de 2024.

Comparece ante este Tribunal, RIMCO, LLC (en adelante, "RIMCO" o "recurrente"), mediante un recurso de Revisión Judicial presentado el 15 de abril de 2024. Por medio de este nos solicitó la revisión de la *Resolución* del 6 de febrero de 2024, emitida y notificada ese mismo día por la Junta de Subastas de la Administración de Servicios Generales (en adelante, "ASG") sobre la Subasta Formal Núm. 24-J06132. El 23 de febrero de 2024, RIMCO presentó una *Moción de Reconsideración* ante la Junta Revisora de la ASG, la cual fue rechazada de plano. La ASG, por conducto de la Oficina del Procurador General (en adelante, OPG), al igual que el licitador agraciado, Reliable Equipment (en adelante, Reliable), comparecieron ante este Tribunal mediante sus respectivos alegatos.

Número Identificador

SEN2024 _____

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, *Confirmamos* la *Resolución* recurrida. En adición, dejamos sin efecto la paralización de los procedimientos.

**I**

A continuación, resumimos los hechos pertinentes para la disposición del recurso, los cuales surgen del expediente ante nuestra consideración.

El 5 de diciembre de 2023, la ASG publicó la invitación a la Subasta Formal para adquirir una plataforma de 35 toneladas para el Departamento de Transportación y Obras Públicas del Gobierno de Puerto Rico.[1] En adición, la ASG hizo disponible el pliego de subasta,[2] y el presupuesto de $483,000.00 que se había destinado para esta.[3] El 20 de diciembre de 2023, Reliable presentó su oferta, la cual ascendía a un total de $489,986.00.[4] El 27 de diciembre de 2023, RIMCO presentó su oferta, la cual ascendía a un total de $470,750.00.[5]

Posteriormente, el 25 de enero de 2024, la ASG emitió una evaluación conforme a la cual determinó que RIMCO y Reliable cumplieron con las especificaciones de las plataformas objeto de la subasta.[6] En esa misma fecha, la ASG recomendó que la subasta se adjudicase a favor de RIMCO.[7] Posteriormente, el 2 de febrero de 2024, el Departamento de Transportación y Obras Públicas (en adelante, DTOP) emitió una recomendación para que la subasta se adjudicase a Reliable.[8] El 2 de febrero de 2024, la ASG le indicó al DTOP que la carta de recomendación no era correcta, porque la que

---

[1] Apéndice del recurso, págs. 4-5.
[2] *Íd.,* págs. 6-51.
[3] *Íd.*, págs. 1-3.
[4] *Íd.*, págs. págs. 52-153.
[5] *Íd.*, págs. págs. 154-245.
[6] *Íd.*, pág. 246.
[7] *Íd.*, pág. 248.
[8] *Íd.*, pág. 252.

estaban recomendando era la más costosa. ASG razonó que la oferta por RIMCO era la más económica y solicitaron que cambiaran la carta emitida a su favor.[9] El mismo 2 de febrero de 2024, el DTOP emitió una recomendación "revisada" en la que recomendó que se adjudicase la subasta a favor de Reliable, toda vez que "aunque el precio es mayor, la adquisición de las piezas y el servicio que ofrece la compañía es más accesible".[10]

El 6 de febrero de 2024, la Junta de Subastas de la ASG emitió *Resolución de Adjudicación* conforme a la cual acogió la recomendación "revisada" del DTOP y adjudicó la subasta a favor de Reliable.[11] A raíz de la adjudicación a favor de Reliable, la ASG tuvo que gestionar un aumento en el presupuesto de la Subasta.[12] De la *Resolución* se desprende que **"de conformidad con la Ley Núm. 73-2019 y los términos dispuestos en ella, así como lo dispuesto en la Ley Núm. 38-2017, según enmendada, una parte adversamente afectada por la adjudicación de la Subasta podrá dentro del término de veinte (20) días calendario contados a partir del depósito en el correo federal o envío por correo electrónico de la notificación de esta adjudicación presentar una solicitud de revisión ante la Junta Revisora de la ASG"**. Así las cosas, el 23 de febrero de 2024, RIMCO presentó un escrito intitulado *"Moción de Reconsideración"* dirigida a la Junta Revisora de Subastas de la ASG.[13] La misma, no fue acogida ni resuelta por la Junta Revisora de la ASG dentro de los términos dispuestos, por lo que se entendió denegada de plano.

Es preciso puntualizar que, durante el proceso de Revisión ante la Junta Revisora de la ASG de esta subasta, hubo un cambio en el estado de derecho efectivo el 19 de febrero de 2024, propulsado

---

[9] *Íd.,* pág. 253.
[10] *Íd.,* pág. 254.
[11] *Íd.,* págs. 256-265.
[12] *Íd.,* pág. 255.
[13] *Íd. pág.* 262

por la Ley Núm. 48-2024, *supra,* el cual modificó los términos de revisión administrativa y judicial. La Ley Núm. 48-2024, *supra,* **ahora establece un término de diez (10) días para presentar el recurso de revisión administrativo bajo la Ley Núm. 38-2017 y la Ley Núm. 73-2019, lo cual crea la uniformidad entre ambos estatutos**.

En este caso, la *Resolución* se emitió **el 6 de febrero de 2024** antes de la entrada en vigor de la Ley Núm. 48-2024, *supra,* **el 19 de febrero de 2024**. Es decir, cuando el recurrente presentó la "*Moción de reconsideración*", el 23 de febrero de 2024 ante la Junta Revisora de Subastas de la ASG, lo hizo previo a las enmiendas que fueron promulgadas bajo la Ley Núm. 48-2024, *supra*, **por lo que no le son de aplicación a RIMCO en los hechos particulares de este caso**. **Es importante recalcar que la notificación de su derecho a revisión fue al amparo de la Ley Núm. 73-2019.**

A RIMCO le aplican los términos dispuestos bajo esta ley. Es decir, contaba con veinte (20) días para la solicitud de revisión ante la Junta Revisora de Subastas de la ASG y donde disponía de treinta (30) días para acudir en revisión judicial ante este Tribunal, siendo esta la ley especial. Por lo tanto, al RIMCO haber presentado su recurso de revisión judicial el 23 de febrero de 2024, la Junta Revisora de la ASG tenía hasta el 25 de marzo de 2024 para evaluar la solicitud de Revisión Administrativa. Ahora bien, al no haber tomado determinación en consideración alguna y haber sido rechazada de plano, es en ese momento en que comenzó a decursar el término de treinta (30) días para que RIMCO acudiera en Revisión Judicial, es decir hasta 24 de abril de 2024. RIMCO presentó su recurso de revisión judicial ante el Tribunal de Apelaciones el 15 de abril de 2024, es decir dentro del término dispuesto. No obstante, lo anterior, "**si el legislador no ha tenido la intención de aplicar retroactivamente una ley procesal o si resulta prácticamente**

**imposible aplicarla así, tal legislación tendrá efectos prospectivos**." *Clases A, B y C y otros*, 183 DPR 666, 680-681 (2011). **El efecto retroactivo de una ley no puede perjudicar los derechos adquiridos al amparo de una ley anterior**. 31 LPRA 5323.

**Como dijéramos anteriormente, en el caso de marras la notificación a su derecho a revisión judicial fue al amparo de la Ley Núm. 73-2019 la cual estaba vigente al momento de su "Moción de Reconsideración" la cual acogemos como solicitud de revisión administrativa.**

Es por ello, que en desacuerdo con la determinación de la Junta de Subastas de ASG, el 15 de abril de 2024, RIMCO presentó este recurso, acompañado de una *Moción en Auxilio de Jurisdicción.* En el recurso que nos ocupa le imputó a la Junta de Subastas de la ASG la comisión de los siguientes errores:

> PRIMER SEÑALAMIENTO DE ERROR: ERRÓ LA JUNTA DE SUBASTA DE LA ASG AL EMITIR LA RESOLUCIÓN A FAVOR DE RELIABLE YA QUE SU OFERTA ERA LA MÁS COSTOSA Y NO REPRESENTABA EL MEJOR VALOR PARA EL GOBIERNO DE PUERTO RICO.
>
> SEGUNDO SEÑALAMIENTO DE ERROR: ERRÓ LA JUNTA DE SUBASTA DE LA ASG AL NO EMITIR LA RESOLUCIÓN A FAVOR DE RIMCO A PESAR DE SER EL POSTOR QUE CUMPLIÓ CON TODOS LOS REQUISITOS DE LA SUBASTA AL PRECIO MÁS ECONÓMICO PARA EL ERARIO.
>
> TERCER SEÑALAMIENTO DE ERROR: ERRÓ LA JUNTA DE SUBASTA DE LA ASG AL DESCARTAR LA RECOMENDACIÓN DE LA ASG Y ACOGER LA RECOMENDACIÓN "REVISADA" DEL DTOP, AUN CUANDO ÉSTA NO ESTABA SUSTENTADA EN EL EXPEDIENTE ADMINISTRATIVO.
>
> CUARTO SEÑALAMIENTO DE ERROR: ERRÓ LA JUNTA DE SUBASTA DE LA ASG AL NO CEÑIRSE A LOS CRITERIOS DE EVLACUACIÓN DE OFERTAS DISPUESTOS EN EL REGLAMENTO NÚM. 9230 AL EMITIR LA RESOLUCIÓN RECURRIDA.

El 15 de abril de 2024, este Tribunal declaró *"Ha Lugar"* la *Moción en Auxilio de Jurisdicción* y ordenó la paralización de los procedimientos. Además, les concedió a las partes recurridas hasta el 22 de abril de 2024 para que presentara su alegato.

El 9 de mayo de 2024, Reliable presentó su alegato en oposición. Respectivamente, la ASG, compareció el 10 de mayo de 2024. Así, con el beneficio de la comparecencia de las partes y a la luz del derecho aplicable, resolvemos.

**II**

*-A-*

En nuestro ordenamiento jurídico, las decisiones de las agencias administrativas están investidas de una presunción de legalidad y corrección. *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 893 (2008). Lo anterior se fundamenta en el conocimiento especializado y la experiencia (*expertise*) sobre la materia que su ley habilitadora le confiere jurisdicción. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 436 (1997); *Misión Ind. P.R. v. J.P. y A.A.A.*, 142 DPR 656, 672-673 (1997). En otras palabras, el conocimiento especializado de la agencia justifica que se sostengan sus determinaciones. Por lo que, en virtud de nuestro ejercicio de revisión judicial, le debemos gran deferencia a las decisiones emitidas por los foros administrativos. *Pérez López v. Dpto. Corrección*, 208 DPR 656, 673-674 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021).

Dentro de este contexto, la revisión judicial se limita a determinar si la agencia actuó de forma arbitraria, ilegal, o tan irrazonable que implique abuso de discreción. *OCS v. Point Guard Ins.*, 205 DPR 1005, 1026-1027 (2020); *Rivera Concepción v. ARPe.*, 152 DPR 116, 122 (2000). Esto significa que el tribunal respetará el dictamen de la agencia, salvo que no exista una base racional que fundamente la actuación administrativa. *ECP Incorporated v. OCS*, 205 DPR 268, 282 (2020); *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 134-135 (1998). Así, la revisión judicial suele limitarse a determinar si: (1) el remedio concedido por la agencia fue el apropiado; (2) las

determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

Ahora bien, esa presunción de legalidad no constituye un dogma inflexible que impide la revisión judicial si no existen las condiciones que sostienen la deferencia. En el caso de *Torres Rivera v. Policía de PR*, 196 DPR 606 (2016), el Tribunal Supremo de Puerto Rico se expresó sobre el alcance de la revisión judicial y mencionó lo siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: **(1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales.** Es importante destacar que, **si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida**. *Íd.*, a la pág. 628.

Por ende, como norma general, el tribunal revisor le debe respeto y deferencia al dictamen administrativo. No obstante, si el foro revisor entiende que uno de estos factores está presente, podrá entonces modificar la decisión. De lo contrario, se abstendrá a ello. **Es pertinente enfatizar que la doctrina no exige que la agencia tome la mejor decisión posible, sino que el criterio a evaluar es si la misma, dentro de las circunstancias particulares del caso, es razonable**. *De Jesús v. Depto. Servicios Sociales*, 123 DPR 407, 417-418 (1989). Por ende, si existe más de una interpretación razonable de los hechos, ordinariamente se avalará la decisión del foro administrativo. *Super Asphalt v. AFI y otros, supra*, pág. 819; *Torres Rivera v. Policía de PR, supra*, pág. 628.

Por su parte la sección 4.5 de la LPAU, *supra,* limita la discreción del tribunal revisor sobre las determinaciones de hecho que realiza la agencia administrativa. 3 LPRA sec. 9675. Como consecuencia, la revisión judicial de los tribunales para determinar si un hecho se considera probado o no se limita conforme a la siguiente norma:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
>
> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
>
> Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. Ley Núm. 38-2017, 3 LPRA sec. 9675.

El Tribunal Supremo de Puerto Rico define el concepto de evidencia sustancial como "**aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión**". *Otero v. Toyota,* 163 DPR 716, 728 (2005); *Misión Ind. P.R. v. J.P., supra,* pág. 131. Además, nuestro máximo Foro ha reiterado que:

> Para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial es necesario que la parte afectada demuestre que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la prueba presentada y hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Domínguez v. Caguas Expressway Motors,* 148 DPR 387, 397-398 (1999); *Hilton Hotels v. Junta Salario Mínimo,* 74 DPR 670, 686 (1953).

Por tal razón, es la parte que impugna la decisión administrativa quien tiene que producir evidencia de tal magnitud que conmueva la conciencia y tranquilidad del juzgador, de forma que éste no pueda concluir que la decisión de la agencia fue justa, porque simple y sencillamente la prueba que consta en el expediente no la justifica.  Ello implica que "[s]i en la solicitud de revisión la

parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hecho de la agencia deben ser sostenidas por el tribunal revisor". *Domínguez v. Caguas Expressway Motors, supra*, pág. 398; *Ramírez v. Depto. de Salud*, 147 DPR 901, 905 (1999).

## -B-

El 19 de julio de 2019, la Asamblea Legislativa de Puerto Rico aprobó la Ley Núm. 73-2019, también conocida como la "*Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019*", 3 LPRA sec. 9831 *et. seq*. En su *Exposición de Motivos* se establece, como política pública del Gobierno de Puerto Rico, la centralización de los procesos de compras gubernamentales de bienes, obras y servicios, en aras de lograr mayores ahorros fiscales y la transparencia en la gestión gubernamental. Cónsono con lo anterior, se "le delega a la ASG la responsabilidad de implantar dicha política pública y de coordinar y dirigir el proceso de adquisición de bienes y servicios y la contratación de servicios del Gobierno de Puerto Rico. *PVH Motor, LLC v. Junta de Subastas de la Administración de Servicios Generales*, 209 DPR 122, 132 (2022). Es por ello que "[e]ntre sus facultades y deberes se encuentra revisar y adjudicar cualquier impugnación a las adjudicaciones sobre subastas realizadas por la ASG". *Id*. pág. 133.

En nuestro estado de derecho, **el procedimiento de subasta pública es de suma importancia y está revestido del más alto interés público**. *ECA Gen. Contrac. v. Mun. De Mayagüez*, 200 DPR 665, 672 (2018). La buena administración de un gobierno es una virtud de la democracia, y parte de una buena administración implica llevar a cabo sus funciones como un comprador con eficiencia, honestidad y corrección para proteger los intereses y el dinero del pueblo al cual dicho gobierno representa. *St. James Security Services, LLC v. Autoridad de Energía Eléctrica*, 2023 TSPR

149, 212 DPR ___(2023); *Super Asphalt v. AFI y otro*, 206 DPR 803, 820 (2021); *ECA Gen. Contrac. v. Mun. de Mayagüez, supra,* pág. 672; *Empresas Toledo v. Junta de Subastas*, 168 DPR 771, 778 (2006).

**El propósito de [la subasta] es "promover la buena administración del gobierno, proteger el erario, y evitar el favoritismo, la corrupción y el descuido en la contratación gubernamental"**. *Cordero Vélez v. Mun. de Guánica*, 170 DPR 237, 245 (2007) (énfasis suplido). De ordinario, "el Estado utiliza el procedimiento de subasta pública el cual consta de las siguientes etapas: (1) la preparación de los pliegos de condiciones y especificaciones; (2) la publicación del aviso de subasta; (3) el recibo de las propuestas selladas y su posterior apertura pública; (4) la evaluación y el estudio de las propuestas por el comité evaluador de la agencia; (5) la recomendación del comité respecto a la adjudicación de la buena pro; (6) la adjudicación de la subasta, y (7) la notificación a los licitadores". *ECA Gen. Contrac. v. Mun. de Mayagüez, supra*, pág. 672.

Como consecuencia de lo anterior, **los tribunales no debemos intervenir con la adjudicación de una subasta o el rechazo de una propuesta, salvo que la determinación administrativa adolezca de un abuso de discreción, arbitrariedad o irracionabilidad**. *CD Builders v. Mun. Las Piedras,* 196 DPR 336, 349 (2016); *Aut. Carreteras v. CD Builders, Inc., 177 DPR 398,* 408 (2009); *Empresas Toledo v. Junta de Subastas*, *supra,* págs. 783-784. En ausencia de estos elementos, "ningún postor tiene derecho a quejarse cuando otra proposición es elegida como la más ventajosa. La cuestión debe decidirse a la luz del interés público". (Citas omitidas). *St. James Security Services, LLC v. Autoridad de Energía Eléctrica, supra*; *Caribbean Communications v.*

*Pol. De PR,* 176 DPR 978, 1006 (2009); *Torres Prods. v. Junta Mun. Aguadilla,* 169 DPR 886, 898 (2007). Cónsono con lo anterior, la esencia del "derecho a cuestionar una subasta adjudicada mediante revisión judicial es parte del debido proceso de ley y, por la misma razón, resulta indispensable que la notificación sea adecuada a todas las partes cobijadas por tal derecho". *Puerto Rico Eco Park, Inc. v. Mun. de Yauco,* 202 DPR 525, 538, (2019).

El artículo 68 de la precitada Ley dispone que "[l]a parte adversamente afectada por la determinación de la Junta Revisora podrá presentar un recurso de revisión ante el Tribunal de Apelaciones conforme a lo establecido en Ley 38-2017 [...]" 3 LPRA sec. 9838e.

Por otro lado, asimismo, en las definiciones contenidas en el artículo cuatro (4), en el inciso (x) de la Ley Núm. 73-2019 se dispone que:

> **(x) Mejor valor: significará que las ofertas se evaluarán en función de los requisitos establecidos en la Invitación a Subastas y el pliego correspondiente, que pueden incluir criterios para determinar la aceptabilidad tales como: inspección, pruebas, calidad, mano de obra, entrega e idoneidad para un propósito particular.** Los criterios que afectarán el precio de la oferta y que se considerarán en la evaluación para la adjudicación, serán medibles objetivamente, como los descuentos, los costos de transporte y los costos totales o de ciclo de vida. La Invitación a Subastas y el pliego establecerán los criterios de evaluación a utilizar. No se puede utilizar ningún criterio en la evaluación de ofertas que no esté establecido en la Invitación a Subastas y el pliego. 3 LPRA sec. 9831 c (x)(énfasis suplido).

Además de la precitada Ley Núm. 73-2019, la ASG aprobó el Reglamento Núm. 9230, también conocido como "Reglamento Uniforme de Compras y Subastas de Bienes, Obras y Servicios no Profesionales de la Administración de Servicios Generales del Gobierno de Puerto Rico" (en adelante, el Reglamento Núm. 9230). En su artículo 3.16, el Reglamento Núm. 9230 dispone que una vez la Junta de Subastas realiza una adjudicación, procederá la notificación de la determinación final mediante *Resolución. PVH*

*Motor, LLC v. Junta de Subastas de la Administración de Servicios Generales, supra,* pág. 134.

En contraste con la definición establecida en la Ley Núm. 73-2019, **el Reglamento Núm. 9320, dispone en las definiciones contenidas en el Artículo 1.6, inciso 4, se define "mejor valor" como**:

> **Será la oferta o propuesta que represente el mayor beneficio para el Gobierno de Puerto Rico**; la oferta o propuesta del licitador o proponente que mejor cumpla con los requisitos establecidos en la hoja de cotización o en el pliego de la subasta o propuesta y **en la cual quede establecido que el licitador o proponente ofrece el mejor bien o servicio, o que tiene la capacidad de realizar la obra de forma eficiente, al considerar todos los criterios, como lo son: inspección, pruebas, calidad, entrega, idoneidad para un propósito particular**, garantías del bien o servicio y los términos bajo las cuales serían prestadas dichas garantías, ciclo de vida del bien a ser adquirido, descuentos, impacto económico en términos de creación de empleos e impacto fiscal sobre el gobierno de Puerto Rico. **También serán considerados como parte del mejor valor, los siguientes elementos: las condiciones y limitaciones de las garantías de piezas y servicios del producto o servicio ofrecido, así como el tiempo y lugar en que se honran y se ejecutan dichas garantías y el impacto fiscal sobre el gobierno de Puerto Rico del producto o servicio**. Los criterios que afectarán el precio de la oferta y que se considerarán en la evaluación para la adjudicación, serán medibles de manera objetiva, como los descuentos, los costos de transporte tanto en su entrega original como para ejecutar sus garantías, y el costo de disposición del equipo, una vez termine su vida útil o utilización, entre otros criterios. **El mejor valor no necesariamente será la oferta o propuesta que presente el más bajo costo.** (énfasis suplido).

En adición, el Reglamento Núm. 9320 destaca en su sección 7.3.17 los criterios necesarios de evaluación para las ofertas recibidas para una subasta formal.

> [...]
>
> **2. Criterios Básicos de Evaluación**
> Al evaluar las ofertas la Junta de Subastas considerará los criterios establecidos en el pliego de la subasta formal junto con los siguientes:
> a. **La exactitud con la cual el licitador ha cumplido con las especificaciones, los términos y las condiciones del pliego de la subasta formal**.
> b. [...]
> c. **Si el precio es competitivo y comparable con el prevaleciente en el mercado**. [...]
> d. [...]
> e. [...]
> f. **El término de entregas más próximo, si este se ha hecho constar como una de las condiciones**.

g.   [...]
h. **El período específico a los términos aplicables a cada garantía, sus limitaciones y condiciones, los pasos requeridos para reclamar la garantía, que entidad proveerá el servicio de reemplazo, subsanación, corrección o reparación del bien o el servicio**.
i.   [...]
j. **Cualquier otro criterio pertinente que represente el mejor valor para el Gobierno de Puerto Rico.**

[...]

**3. Rechazo de la Oferta más Baja**
La Junta de Subastas podrá rechazar la oferta de precio más baja cuando ocurra una o varias de las condiciones siguientes:

[...]

**f. cuando la oferta no representa el mejor valor para el Gobierno de Puerto Rico.**

Las razones por las cuales se rechace la oferta más baja en precio se harán constar detalladamente por escrito y el documento formará parte del expediente de la subasta. (Énfasis suplido).

### -C-

Si bien es cierto que, como regla general, en nuestra jurisdicción rige, en nuestra jurisdicción rige el principio de la irretroactividad de las leyes, este precepto no es absoluto. *Domínguez Castro v. ELA*, 178 DPR 1, 83 (2010); *Consejo Titulares v. Williams Hospitality,* 168 DPR 101, 108 (2006). Así surge del texto del Artículo 9 del Código Civil de 2020, donde se establece que **"[l]a ley no tiene efecto retroactivo, excepto cuando se dispone expresamente lo contrario. El efecto retroactivo de una ley no puede perjudicar los derechos adquiridos al amparo de una ley anterior**". 31 LPRA sec. 5323. (Énfasis suplido) Este principio está arraigado en que esta es la única manera en que el legislador puede lograr la transformación de ciertas situaciones jurídicas que no se adaptan a los tiempos. Lo contrario equivaldría a mantener el espectro social atado a una circunstancia particular perpetuamente, lo cual impide un desarrollo concertado. J.M. Suárez Collía*, El principio de irretroactividad de las normas jurídicas,* Madrid, Actas, 2da ed. revsd., 1994, pág. 56.

El Tribunal Supremo de Puerto Rico ha establecido que una ley puede tener efecto retroactivo si así surge claramente de la intención legislativa, de manera expresa o tácita. *Asoc. Maestros v. Depto. Educación*, 171 DPR 640, 648 (2007); *Rodríguez v. Retiro*, 159 DPR 467, 476 (2003); *Nieves Cruz ex rel. v. Universidad de Puerto Rico*, 151 DPR 150, 158 (2000). Ahora bien, nuestro máximo foro judicial ha resuelto que "aunque en una ley no se haya dispuesto expresamente su efecto retroactivo, procede su aplicación retroactiva cuando dicha interpretación resulta la más razonable de acuerdo con el propósito legislativo". *Junta de Relaciones del Trabajo v. Autoridad de Energía Eléctrica*, 133 DPR 1, 14 (1993).

Indistintamente de lo anterior, en aquellos casos en que la ley disponga su efecto retroactivo o así surja de la intención legislativa, ésta no podrá afectar derechos adquiridos por las partes en virtud de la legislación anterior. Los derechos adquiridos son la "consecuencia de un hecho idóneo, al producirlos en virtud de la ley vigente en el tiempo en que el hecho ha sido realizado, y que se han incorporado al patrimonio de la persona". Suárez Collía, *op cit.,* pág. 55. Ahora bien, no toda circunstancia legal en virtud de la vigencia de una ley anterior es un derecho adquirido para propósitos de restringir la retroactividad, expresa o tácita, de una ley posterior.

> [P]ara que pueda hablarse de derechos adquiridos propiamente tal es necesario que se trate de situaciones subjetivas, cuya extensión y alcance son determinados por **un acto o negocio jurídico, no directamente por la ley, que se limita a hacer posible la conclusión de ese acto o negocio (un contrato, por ejemplo)**. Este negocio singular e individual no puede ser afectado por la norma posterior. En cambio, las situaciones jurídicas objetivas (por ejemplo, el régimen de la propiedad) pueden ser modificadas por leyes posteriores. J. Santos Briz y otros, <u>Tratado de Derecho Civil</u>, 1<sup>era</sup> Ed., Barcelona, Editorial Bosch, S.A., 2003, Tomo I, pág. 294 (énfasis suplido).

**Así pues, no se puede interpretar que un derecho adquirido es aquel conjunto de facultades que la ley anterior permitía que los ciudadanos ejerciesen, puesto que ello sería el**

**estado de derecho objetivo que la nueva ley intenta cambiar**. En cambio, un derecho adquirido en su contexto consumado las partes descansaron en el estado de derecho que regía al amparo de la ley anterior. *Consejo Titulares v. Williams Hospitality,* 168 DPR 101, 109 (2006) (énfasis suplido).

El Tribunal Supremo de Puerto Rico ha establecido que "[d]e igual forma, los estatutos que versan sobre la jurisdicción son de interés público y no están comprendidos dentro de las disposiciones del Artículo [9] (antes, artículo 3) del Código Civil, 31 LPRA sec. 5323, por lo que comienzan a regir retroactivamente. *JRT v. AEE,* 133 DPR 1, 13 (1993).

### III

El recurrente acude ante este Foro para cuestionar la adjudicación de una subasta por parte de la Junta de Subastas de la ASG para DTOP. Con el beneficio de la exposición del derecho aplicable, procederemos con la discusión de los señalamientos de error.

RIMCO sostiene que la Junta de Subastas de la ASG erró al emitir una *Resolución* favorable a Reliable a pesar de que su oferta era más costosa. En adición, señala que la Junta de Subastas de la ASG incidió al no emitir la *Resolución* a favor de RIMCO, a pesar de que era el mejor postor que cumplió con los requisitos de la subasta. También, argumenta que la Junta de Subastas erró al descartar la recomendación de la ASG y acoger una recomendación revisada por DTOP, a pesar de que no se sustentaba con el expediente administrativo. Por último, RIMCO señala que la Junta de Subastas erró al no ceñirse a los criterios de evaluación de ofertas dispuestos en el Reglamento Núm. 9230. Por estar intrínsecamente atados los señalamientos de error, los resolveremos en conjunto. *No le asiste la razón.*

De entrada, es preciso señalar que según se desprende de la *Resolución* emitida por la Junta de Subastas de la ASG, **la oferta presentada por Reliable era la única oferta vigente al momento en que se emitió la *Resolución* recurrida.**[14] RIMCO omite mencionar este detalle en su recurso ante nos. Destacamos que, la oferta del licitador RIMCO está fechada **al 27 de diciembre del 2023**, y que dicha oferta tendría vigencia de 30 días, es decir hasta el **27 de enero de 2024**. Los licitadores debían entregar sus ofertas de forma física en o antes del 28 de diciembre de 2023.  Surge de la *Resolución* emitida por la Junta de Subastas de ASG el **6 de febrero de 2024** que:

> "[r]ecibidas las ofertas, la Administración Auxiliar de Adquisiciones de la ASG y la Unidad de Especificaciones de la ASG, así como DTOP, procedieron a evaluarlas e hicieron sus recomendaciones a la Junta de Subastas. La Agencia Requirente remitió su recomendación junto a la nueva certificación de fondos el 2 de febrero de 2024. Por último, la Administración de Adquisiciones de la ASG sometió a esta Junta su evaluación junto a los expedientes para el análisis y adjudicación en el día de ayer 5 de febrero de 2024.[15]
>
> [...]
>
> Por último, el documento antes señalado indica que la cotización era válida por treinta (30) días. El Acto de Apertura fue celebrado el 28 de diciembre de 2023. **Tomando esa fecha como la que provoca que comience a discurrir el término de los treinta (30), estamos forzados a concluir que la oferta expiró el 27 de enero de 2024**. Es decir, al momento en que DTOP emitió su recomendación, así como la certificación de fondos, y la Administración Auxiliar de Adquisiciones refirió el caso a la Junta para, **la oferta de Rimco estaba expirada. De ahí que, esta Junta no puede aceptar esa oferta, <u>ya que aun si no existieran los demás defectos señalados, esta propuesta no se encuentra vigente al momento de recibirse el expediente ante este Ente para emitir una Resolución</u>.**"[16] (Énfasis suplido).

Ahora bien, de la legislación y la reglamentación aplicable, podemos colegir que el mejor valor no será el más económico si ello va a conllevar una inversión monetaria eventualmente por defectos en el desarrollo, o fallas en el término de entrega. En la

---

[14] *Íd.*, pág. 260.
[15] *Íd.* pág. 257.
[16] *Íd.*, pág.262.

consideración de lo que es la oferta más económica o de mejor valor, también se analiza el beneficio que se desprenda de esta, el cumplimiento de los términos y condiciones impuestas por la agencia.

Este ejercicio es una evaluación integral de todas las necesidades que tiene la agencia, en este caso DTOP, para con su *expertise* poder establecer las necesidades y requisitos que ameritan la celebración de la subasta. Es por ello que el Reglamento Núm. 9230 en su artículo 1.6, inciso 4, dispone que "***el mejor valor no necesariamente será la oferta o propuesta que presente el más bajo costo***".

Aun cuando RIMCO presentó una oferta en precio menor, la Junta de Subastas de ASG determinó que este no cumplía con lo requerido y no representaba el mejor valor para el Gobierno de Puerto Rico. **En adición, dicha oferta no estaba vigente para ser considerada por la Junta de Subastas.** Por otro lado, surge de la *Resolución* recurrida que el término de entrega era incierto y que podía ser modificado unilateralmente por RIMCO. Entre las especificaciones del Pliego de Subasta, el término de entrega era un factor sumamente determinante. A su vez, la entrega de piezas para las plataformas no estaba disponibles en Puerto Rico y habría que solicitarlas fuera del país.

Adicionalmente, la Junta de Subastas señaló: "[q]ue RIMCO es diligente mientras dure la garantía del equipo, luego de caducar la misma es difícil la adquisición de piezas porque la compañía no cotiza las piezas hasta que estén en Puerto Rico. Este hecho nos obliga a decomisar eventualmente el equipo".[17] Como puede observarse, esto es contrario al mejor valor propuesto que presenta RIMCO en el costo más bajo.

---

[17] *Íd.*, pág. 261

Por otro lado, RIMCO señala que la Junta de Subastas erró al descartar la recomendación de la ASG y acoger una recomendación revisada por DTOP, a pesar de que no se sustentaba con el expediente administrativo.

En la *Resolución* de la Junta de Subastas de la ASG, se desprende que la Junta de Subastas evaluó algunos documentos contenidos en el expediente administrativo, tales como: las ofertas, las recomendaciones, la certificación de la agencia requirente, los expedientes para análisis entre otros documentos exigidos por el Pliego de Subastas. La Junta de Subastas destacó que "DTOP recomendó este Licitador [Reliable] y expuso que '[l]a propuesta de la Compañía "Reliable Equipment" aunque el precio es mayor, la adquisición de piezas y el servicio que ofrece la compañía es más accesible'. '[A]l escoger la compañía Reliable Equipment permite que el equipo pueda ser reparado en menos tiempo, esto ya que las piezas están en Puerto Rico'".[18] El *expertise* de la agencia, en este caso, el DTOP, fue tomada en consideración por la ASG y la Junta de Subastas al momento de adjudicar la *buena pro*. De la misma manera, fue integrada en la *Resolución* recurrida e integrada al expediente administrativo. El término y la posible tardanza en la entrega y la garantía de las piezas fueron razones de peso sustancial en la adjudicación y esto fue sopesado por la necesidad de DTOP.

Por último, RIMCO señala que la Junta de Subastas erró al no ceñirse a los criterios de evaluación de ofertas dispuestos en el Reglamento Núm. 9230. El recurrente señala que la decisión de la Junta de Subastas de la ASG se limitó exclusivamente en el factor del término de entrega y que ello, no podía ser el factor decisivo para la adjudicación de la subasta. **Sin embargo, como previamente destacamos, se desprende de la *Resolución* que la oferta de la**

---

[18] *Íd.*, pág. 260.

**parte recurrente no estaba vigente al momento de la adjudicación de la *buena pro*.** La necesidad de DTOP se sostuvo en más de un factor como lo fue el término de entrega. La Junta de Subastas de la ASG expresamente consignó en la *Resolución* recurrida que "[l]a recomendación recibida por parte de la Administración Auxiliar de Adquisiciones no es cónsono con lo determinado por esta Junta, **sin embargo, sí acogemos la recomendación sometida por el DTOP**".[19] Es decir, parte de las necesidades y requisitos fueron, los términos, las condiciones de entrega y garantía de piezas, los requerimientos especiales, las especificaciones y las disposiciones del Pliego de Subastas para la Subasta Núm. 24J-06132.

La Junta de Subastas de la ASG añade que el DTOP sopesó además que "aunque el precio es mayor, la adquisición de piezas y el servicio es más accesible",[20] al igual que la reparación de las piezas. Es por ello que, la Junta de Subastas de ASG culmina señalando que Reliable cumplió con todos los requisitos dispuestos para ser el licitador agraciado y que representa el mejor valor para el Gobierno de Puerto Rico. *No se cometieron los errores señalados.*

De un examen mesurado del expediente que obra ante nos, y dentro de la discreción de la agencia, los tribunales revisores hemos de otorgar deferencia a las decisiones administrativas, pues estos organismos gubernamentales gozan de experiencia y conocimiento especializado sobre los asuntos ante su consideración, lo cual ampara sus dictámenes con una presunción de legalidad y corrección. Por lo que *confirmamos* la *Resolución* recurrida, toda vez que no se cometieron los errores señalados.

---

[19] *Íd.,* pág. 257.
[20] *Íd.,* pág. 260.

**IV**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de este dictamen, se *confirma* la *Resolución* emitida por la Junta de Subastas de ASG y en adición dejamos sin efecto la paralización de los procedimientos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones